J-A24001-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STANFORD WILLIAMS | |
| Appellant | No. 1932 WDA 2015 |

Appeal from the PCRA Order November 9, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0000019-1994

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                    FILED December 1, 2017

Stanford Williams appeals from the November 9, 2015 order entered in the Allegheny County Court of Common Pleas denying his petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

We have previously set forth the factual history of this case, which we incorporate and adopt herein. Commonwealth v. Williams, No. 126 WDA 2000, unpublished mem. at 1-5 (Pa.Super. filed Aug. 9, 2002) (quoting Trial Court Opinion, 12/7/00, at 2-7).

This case has a complicated procedural history. Following a November 1996 trial, a jury was unable to reach a verdict. In August 1998, a second trial ended in a mistrial. On November 23, 1999, following a third trial, Williams was convicted of first-degree murder, burglary, criminal conspiracy,

careless driving, and driving on the right side of the road.[1]  On December 15, 1999, the trial court sentenced Williams to life in prison for the murder conviction and a consecutive term of 5 to 10 years' imprisonment for the conspiracy conviction.   This Court affirmed the judgment of sentence on September 9, 2011,[2] and the Pennsylvania Supreme Court denied Williams' petition for allowance of appeal on April 10, 2012.

On October 23, 2012, Williams filed a timely pro se PCRA petition.  The PCRA court appointed counsel, who filed an amended petition.  The PCRA court held an evidentiary hearing.  On November 17, 2015, the PCRA court denied the petition, finding the issues lacked merit.  On December 15, 2015, Williams filed a timely notice of appeal.

Williams raises the following issues on appeal:

> I. Did the lower court abuse its discretion in dismissing the PCRA petition where the petition was timely filed; [Williams] is serving a term of imprisonment pursuant to the instant convictions; he is eligible for relief based on violations of his constitutional rights;  and  his  claims  have  not  been previously litigated or waived?

_____

[1] 18 Pa.C.S. §§ 2501(a), 3502, and 903(a)(1); 75 Pa.C.S. §§ 3714, and 3301, respectively.

[2] This Court originally remanded to the trial court for a hearing and re-assessment of Williams' Rule 600 motion.  Commonwealth v. Williams, No. 126 WDA 2000, unpublished mem. at 13-14 (Pa.Super. filed Aug. 9, 2002). Following remand, the trial court granted the motion.  On appeal, this Court reversed and re-instated the judgment of sentence.  Commonwealth v. Williams, No. 35 WDA 2005, unpublished mem. (Pa.Super. filed June 27, 2006).  On March 2, 2007, the Pennsylvania Supreme Court denied Williams' petition for allowance of appeal.  Williams direct appeal rights were re-instated and he appealed, raising issues other than the Rule 600 issue.

II. Did the lower court abuse its discretion in dismissing the PCRA petition where [Williams] established that his convictions were obtained in violation of the double jeopardy clause, and his right to the effective assistance of counsel of the United States and Pennsylvania Constitutions, because trial counsel failed to move to dismiss the charges on double jeopardy grounds?

III. Did the lower court abuse its discretion in dismissing the PCRA petition where [Williams] established that his convictions were obtained in violation of his right to due process of law under the United States and Pennsylvania Constitutions, because trial counsel was ineffective for failing to lay a proper foundation for calling witness John Elash who would have raised a reasonable doubt as to the probative value of gunshot residue evidence?

Williams' Br. at 4.

In his first issue, Williams argues his petition was timely, he is currently incarcerated, and his claims are not previously litigated or waived. The PCRA court reviewed the merits of Williams' claims and dismissed his PCRA petition because the claims raised lacked merit. The PCRA court did not dismiss the petition because the petition was untimely, because Williams was not currently incarcerated, or because the claims were previously litigated or waived. This issue, therefore, does not merit relief.

Williams next argues that his trial counsel was ineffective for failing to file a motion to bar re-trial following the grant of a mistrial during the August 1998 trial. He argues that the double jeopardy provisions of the United States and Pennsylvania Constitutions prohibited the Commonwealth from proceeding with the November 1999 trial. He maintains that he did not

request or consent to the mistrial, but rather that the trial court granted the mistrial sua sponte without a manifest necessity to do so.

During the August 1998 trial, Williams' counsel, John Elash, Esquire, informed the trial court that a defense witness, John Faingnaert, whose testimony had been stipulated to for the November 1996 trial, had altered his testimony. N.T., 8/13/98, at 315. The 1996 stipulation, which was based on an affidavit from the witness and from the witness's discussions with Elash, stated that Faingnaert

> met Stanford Williams on the premises of the State Gamelands on November 7, 1996, between 12:00 and 1:00 p.m. Mr. Faingnaert assisted Mr. Williams with the cleaning and test-firing of his deer rifle for the upcoming deer season, and this was a bolt-action rifle.
>
> I'm sorry. 1993. I'm sorry. That was November 7, 1993.

N.T., 11/19-22/96, at 391-92; see also N.T., 8/13/98, at 315, 317. In August 1998, Faingnaert informed the Commonwealth that he had not seen Williams, nor had he told Elash that he had seen Williams. N.T., 8/12-14/98, at 315, 317. The following exchange then occurred:

> [THE COURT]: The problem that we have is that you can't put that testimony forward because testimony through [Williams'] sister is hearsay. You would have to put him up and you would be impeaching your own witness. You couldn't waive claims of ineffectiveness for your failure to come and testify in any subsequent impeachment of that witness if put forward by [the Commonwealth].
>
> . . .
>
> We're left in a situation where there is no out in terms of the continuation of this particular trial.

[DEFENSE COUNSEL]: Your Honor, I also, I don't know what Mr. Williams wants to do. I know he has paid for four different attorneys in the recent past, he has paid for two trials to me. I don't know if he has the funds to even go forward. I guess we would have to let the Court know that. Obviously, I can't continue to represent him.

THE COURT: You're going to be a witness?

[DEFENSE COUNSEL]: I am going to be a witness. If [the Commonwealth] wants to supplement, that is my understanding.[3]

Id. at 317-18. The trial court granted "[Williams'] motion for a mistrial." Id. at 321.[4]

On direct appeal following his November 1999 trial, we found that Williams waived his claim that the proceedings should have been dismissed on double jeopardy grounds because he did not raise it before the trial court. Commonwealth v. Williams, No. 824 WDA 2008, unpublished mem. at 8 (Pa.Super. filed Sept. 9, 2011). We further noted that even if he had not waived the claim, Williams would not be entitled to relief because he sought

_____

[3] The certified record in this case contains only limited portions of the record from the August 1998 trial. Based on our review of that limited record, it appears that Faingnaert's recantation led Williams' trial counsel to perceive the need to testify about his earlier discussions with Faingnaert, thus necessitating a new trial.

[4] The certified record contains only pages 315 through 322 of the transcript from the August 1998 trial. Although that portion of the transcript does not contain a "motion" for a mistrial, counsel stated that he could not continue to represent Williams because counsel would be a witness. Further, counsel did not object after the trial court granted "[Williams'] motion for a mistrial." N.T., 8/12-13/98, at 321.

the mistrial and, therefore, a subsequent trial was not barred by double jeopardy.  Id. at 9.

The PCRA court denied Williams' ineffective assistance of counsel claim, reasoning that the underlying claim lacked merit.  It found that, because Williams requested a mistrial, the claim that double jeopardy barred a re-trial was meritless.  This was not error.

Williams next argues that his counsel at his November 1999 trial, David Shrager, Esquire, was ineffective for failing to lay a proper foundation for the admission of the testimony of Elash, Williams' prior counsel.  The PCRA court found:

> A hearing was held on Williams' petition for post–conviction relief at which hearing Elash testified.  By raising the claim of Shrager's[5] ineffectiveness for failing to lay the proper foundation, Williams failed to put forward any information during Elash's testimony as to what the scope of Elash's testimony would have been.[6]  It is known that at the first

_____

[5] Shrager was deceased at the time of the PCRA hearing.

[6] At the November 1999 trial, the Commonwealth requested an offer of proof regarding Elash's testimony.  The following exchanged then occurred:

> MR. SHRAGER: John spoke to Mr. Faingnaert on earlier occasions, and he would indicate that Mr. Faingnaert said that he had met with Stanford on November 7th, 1993 at the Gamelands, and that Mr. Faingnaert said to John Elash that he helped Mr. Williams sight the gun and clean the gun, or that he taught him how to clean the gun. He told him he taught him what was necessary to clean the gun, and that would be the offer.

trial Williams presented the testimony of John Faingnaert, who testified that he was game warden and that he assisted Williams in shooting and cleaning a rifle. This testimony was put forward to help explain why gunshot residue may have appeared on Williams' hand when he was apprehended by the police and subsequently subjected to a gunshot residue test. Elash was available to testify on this subject, however, was never once asked a question during the post-conviction relief hearing as to what his testimony would have been. It was incumbent upon Williams not only to plead, but also to prove this particular claim of error and he has failed to do so.

1925(a) Op. at 7. We agree and conclude that the PCRA court did not err.

Order affirmed.

_____

MR. MERRICK: That wasn't challenged. Mr. Faingnaert went beyond the offer in terms of what he said, and I hadn't heard some things, but on those points it wasn't challenged, and I might add I suspect that this testimony is being offered to show that he cleaned the gun, and that would be for the truth of the matter asserted. Faingnaert wasn't asked about that by the defense on direct, and he wasn't crossed on it.

THE COURT: He said he told whoever he was meeting with how to clean a gun.

MR. MERRICK: And that wasn't challenged. I didn't ask him question one about that, and I strongly object to this testimony.

THE COURT: Sustained.

N.T., 11/23/99, at 34-35.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/1/2017